First case of the morning, call 209-271, Gavin F. Gallagher v. The Union Square Condominium Homeowners Association, Landscapes Concept Management. On behalf of the apologist, Mr. Paul Adams. On behalf of the apolyte, Union Square Condominium Association, Mr. Richard Foss. On behalf of Landscapes Concept Management, Mr. Stuart Rappaport. Good morning, counsel. Good morning. Mr. Adams. Thank you. May it please the court, counsel. I'm going to take seriously my admonition not to regurgitate the briefs, and I want to use the time allotted me to make a couple points that I may have failed to make clearly enough, particularly my reply brief. First, I'd like to call the court's attention to paragraph 16 of the dismissed complaint wherein it is alleged that Gallagher was walking along this driveway because he had parked his car out in the street and was unable to access his garage, not his unit. And he was trying to walk this icy path between the barns created by Landscapes' plowing effort on the driveway to get to his garage to determine what needed to be done to clear the driveway sufficiently to get his car out of the garage. Although the flight case is on point, it is distinguishable, and perhaps significantly so, in the sense that flight involved a condominium unit owner who was walking along the driveway to get to his unit, not to get to his garage so that he could move his car into the garage. I point that out because this distinction between a sidewalk and a driveway has particular significance in terms of what the Landscapes' contract required of it, distinct requirements asked between sidewalks and driveways. At page 16 of the record, page 20 of the appendix, the Landscapes' contract explicitly required that driveways are to be cleared with a snow removal blade. It goes further to specify that driveways are to be salted in a manner distinguishable with a different chemical than sidewalks are to be salted. I make that point to address two arguments. The first, secondarily, is that which is raised beginning at page 10 of the Landscapes' brief, which is that this complaint was dismissed pursuant to the contract. The contract wasn't anything that was ever considered by the circuit court in its decision to dismiss the complaint. The dismissal was predicated solely on the immunity statute, and this illustrates that based on the allegations in the complaint, Landscapes didn't perform under the contract. But I raise this more importantly to highlight the difference between sidewalks, the term used in the immunity statute, and driveways, a term nowhere found in that statute. And I'm not going to harp on that distinction that I make probably ad nauseum in Appellant's brief. Do you want to summarize what you think the distinction is, then? Yes, sidewalks are for pedestrians. In the statute specifically, the immunity extends to snow removal efforts on, quote, sidewalks abutting property or sidewalks on the premises. This complaint alleges neither. This complaint alleges deficient snow removal efforts on a driveway, and driveways aren't enumerated anywhere in the statute. As an immunity provision under Chapter 745, the statute is to be strictly construed and not rewritten by the courts. And it is the Appellant's contention that Flight rewrote the statute by providing and extending the immunity to snow removal efforts on driveways, which is a term nowhere found in the statute. And I recognize the line of cases, including a couple from this court, which have extended the immunities to walkways that continue from sidewalks abutting premises onto the premises themselves in the context of condominium development properties. But even the analysis in those cases don't take you as far as driveways. And the legislature, as the brief points out, has recognized over and over, just as Landscape's own contract does, an important distinction between driveways and sidewalks. If the legislature had wanted to adopt what the Landscape's brief refers to as this functional approach, essentially anywhere anyone walks is encompassed by the immunity, the legislature could have said so. The legislature could have described it that broadly. Instead, the legislature, in the statute that's to be strictly construed, chose not once but twice the phrase sidewalks abutting property or sidewalks abutting the premises. Sections 1 and 2 of the statute phrase it a little differently. So it is the epilogue's contention that the immunity provision, which was the one and only basis for the circuit court's dismissal of this complaint, simply doesn't apply to a driveway. And that the flight opinion, which was the basis for the motion and the circuit court's dismissal, is just wrongly decided. This court isn't obliged to follow flight. First district opinion in the epilogue urges this court to reject it, reverse, and remand. If I could go further, briefly, and address, highlight the claims against not the snow removal defendant Landscapes, but the premises owner Union Square and its management company, Vanguard. Its duties to maintain the premises here arise in two places, first in the condominium declaration, which is explicitly alleged in paragraph 4 of the complaint, and in the condominium act, which gives the owner and the management company the duty to maintain the common areas of the premises. Paragraph 24 of the complaint alleges specific averments of negligence on the part of the condo association and its management company that go to those specific duties that are unique to it that haven't anything to do with snow removal. The duty to inspect the premises, the duty to salt after snow removal efforts, the duty to warn, and the general duty to maintain the premises in a safe condition. Let me ask you a question. Yes, sir. Under the facts, did the owner attempt to snow plow the drive and just didn't make one path? The landscape defendants, Landscapes, did that, as a contrast, the agent of the owner, and cleared this narrow little path and, in addition, created berms that made the area otherwise impassable. And the area beneath the cleared path was packed ice, where up until the time they arrived, it was pure snow. Is there anything about your case that says that if the owner assumes a duty, even though it doesn't come under the statute and does it negligently, that there would be liability? Or do you think the statute covers that? The statute presumes an assumed duty. The statute immunizes snow removal activities once undertaken, assuming an assumption the appellant rejects, that the statute applies to driveways at all. So there is an aspect of this that's an assumed duty. The statutory immunity addresses the assumed duty if you accept the contention that we reject, that it's duty to properly, completely, thoroughly remove snow and ice, which performed negligently. This doesn't apply to driveways, that's all. With respect to the premises liability claims, in your reply brief, you do reference paragraph 24A, E, and F. But not 24C, which was the spreading salt or sand, the failure to spread salt or sand over the unnatural accumulation. That's at 810 of the brief, the opening brief. Was that just an omission? That was just an oversight on my part. So you meant that that should be included as well? Yes, Your Honor. And then how do the actions alleged then in these paragraphs, A, C, E, and F, constitute a breach of their duty, union and Vanguard's duty to your client? Their duty is that of a premises owner, and I'm going to draw a blank on the IPI section, I think it's the 120 series. Both under the declaration and the statute, the condominium association and its management company have the same duties as premises owners to maintain the common areas, and this driveway was such a common area, in a safe condition. And those averments of negligence at 24A, C, E, and F were ways in which those defendants breached those duties in this case that haven't anything to do with snow removal. The condo associations and its management companies' duty to safely maintain the common areas. Counselor? Yes, sir. Am I correct in my belief that the court granted a 2619 motion? Yes. Doesn't a 2619 motion take as admitted or as given in mathematical terms that a cause of action is properly stated? Yes. And that an affirmative defense is being interposed? That's correct. So if we find that this is not a sidewalk and the affirmative defense is not viable, then we don't have to deal with whether or not there is or isn't a duty, because under the terms of the procedure that we have this case brought to us, it is presumed that you stated a cause of action.  And I was puzzled, and that's why I said in my opening remarks, I was puzzled by the argument raised at pages 10, 11 of Landscape's brief to the effect that the circuit court dismissed on the basis of the contract, which it plainly did not do. It granted a 2619 motion to dismiss based solely on the assertion of this immunity provision and on no other basis. I guess I had one other question. Doesn't the application of the act in a case such as this one, that is where the driveway is the primary, really the only way of getting in and out of the residence, both for pedestrians as well as cars, further the purpose of the act, that is to encourage owners to keep a clean pathway, let's say? Respectfully, there isn't any such fact alleged in the complaint or otherwise in the record. This case, we don't know, and this case doesn't raise or allege anything having to do with access to the units like Flight did and the other sidewalk, walkway opinions of this and other court settings. In this instance, what Kevin Gallagher was trying to do, what paragraph 16 of the complaint makes clear he was trying to do was get from the curb to his garage, not to his unit, down this narrow little path that was left to him from the street to the garage for the purpose of determining once he got to his garage what he'd have to do to get his car off the street and into the garage. So my answer to the question is that the facts of this case don't in any way implicate the policy considerations behind the statute. However broadly you construe sidewalks abutting the property, it's not this case. Well, there are photographs in the record of the units, how they're set up, the driveway, and I mean, I think that's part of the record. That is the physical structure, isn't that correct? You're saying we should ignore that? Yes, because those aren't the facts that are alleged and those aren't the circumstances under which Gallagher fell and was injured. Had Gallagher gotten his car into his garage, there was a way for him to get from the garage to his unit that would have included walking on actual walkways or sidewalks that were part of that property, part of that development. He would not have been limited to walking down the center of the driveway because of the existence of these berms. So I don't think that applying the immunities under the Snow Removal Act to the facts of this case furthered the statutory purposes, which was your original question. Thank you, counsel. You'll have an opportunity to reply. I have no other comments unless if there is any other questions. Thank you very much. Thank you. All right, counsel, I see there are two of you at counsel table. Have you decided how you wish to divide the time? We have. I represent landscape management, landscape concepts management. I'll be roughly 10 minutes. Mr. Rappaport? Yes. Okay. Well, the time, excuse me, counsel, for each side is 15 minutes. You could probably, if both my colleagues agree, add an additional five minutes. That would give each of you 10 minutes. Would that work? I anticipate roughly 10 for me and five for Mr. Flores. Okay. All right. 10 each. Let's say 20 minutes. All right. Well, we'll give you 20 minutes, and however you both wish to divide it is fine with us. Thank you. Okay. Just for starters, I'm very pleased to have the opportunity to appear before the panel on behalf of my client, Landscape Concepts, and also professionally, it's a high point. Obviously, the issue is what is a sidewalk abutting a residence or a sidewalk abutting a property? What is it, what does it mean, and, of course, what do the Illinois courts say it means? Now, rather than just launching into a discussion of the case law, which we've all read, I think more of a real-world example. If one of the justices on the panel wanted to come to my home or my neighbor's home and perhaps with a child or grandchild sell Girl Scout cookies or knock on a door for whatever reason, how would you do it? You would probably park somewhere. You would walk on a traditional municipal public sidewalk. You would walk up to my house, and you would see a driveway, and you would have to walk on that driveway to a walkway leading up to my front door, and there would be a stoop there. So that's how you would get there. Is that the actual scenario here? Yes. Mr. Gallagher, who actually lives in Haynesville, one town over from where I live, it's pretty much the same. There's a little difference because if you look at the photographs attached to the 2619 motion, it's a condominium complex, and there is no traditional sidewalk. So what you would do is you would park in the street, and you would walk up his, quote, driveway and either enter through his garage, if he was expecting you there, which is closer to the street, or walk on a separate walkway up to a stoop in his front door, just like the U.K. Was sodium chloride used in this driveway, at least up to the point where the sidewalk was attached? I don't know. Factually, what was done is not part of the record, whether it was sodium or calcium, and in either event, the allegations of the complaint that the Act would apply to would be either a shovel malpractice or a de-icing malpractice, for lack of another word. But that's the type of thing that the Act immunizes, which is removes or attempts to remove snow or ice, which would be using either or. Counsel, I think, as I understand it, it's your position that the driveway in this case is sufficiently akin to a sidewalk to come within the scope of the Act. And I guess my question is, what language in the Act itself leads you to believe that it encompasses a sidewalk? Sure. The sufficiently akin language comes directly from the U case and from the flight case, and that is the analysis used both by this Second District Court and the First District. Now, in a lot of the briefs we talked about, especially the appellant talked about sidewalk versus driveway, but the statute doesn't just say sidewalk. It says sidewalk abutting the premises, and in the Kurzak case, there was a lot of discussion about, well, what does abutting mean? Because the plaintiff in the Kurzak case tried to say, well, abutting means something else. Abutting means bordering or joining, so what is a sidewalk bordering or adjoining a residence? The best analysis we have comes from the cases that have already been decided, which is it's an access used for pedestrians. Now, I'll draw an analogy to another immunity act, which is the Local Government Employees Immunity Act. There are a lot of cases on when a pedestrian is walking on a street and there's a defect in the street under the municipality's control, is that pedestrian an intended and permitted user of that street? In the Curatola versus Niles case that actually the appellant cited, if the pedestrian is walking in the middle of the street, which is clearly vehicular traffic area, the answer is no. But if the pedestrian is walking in an area where people are expected to load and unload, the answer is yes, and that's the Curatola case. So you're saying that just because it's a paved surface and a person is walking on it, that isn't sufficient? So you're not including, let's say, a parking lot or a paved patio? I'm not, because I think that was stretched a little bit farther. This is more of a- Well, so then what are the criteria we as a court are to use for determining whether a particular paved surface comes within the scope of the act? I would suggest- What would you say the criteria are? Sure. I would suggest the court look to the analysis in Flight and the analysis in You and the analysis in Kurzak, most of which focused on the function, access and ingress. One of the questions, Justice, you asked the appellant was, isn't this about access, the only way in and out? And in this particular case, if you look at that driveway for a pedestrian seeking to access Mr. Gallagher's unit, that pedestrian is going to walk on this driveway. It is the intended and permitted use of that driveway, the intended and permitted use of the driveway for pedestrian access as a pedestrian path, but it is also a dual use. It is also for vehicular access. But now, wasn't the act in derogation of common law, and doesn't that mean we have to strictly construe it and look at first the plain language in that statute? You do. And these principles of statutory construction, one of them, of course, is strict construction. Another is giving effect to the legislature's intent. That's the primary rule. Another is avoiding an absurdity or an anomalous result. You tell us that. Another is to use plain and ordinary means. Now, I am not going to say that construing a sidewalk abutting the residence to include that part of the driveway commonly used as a footpath is the strictest construction possible of the act, because it's not. However, the question is how strictly do you want to construe it while also giving effect to statutory construction cardinal principle number one, giving effect to the legislature's intent to avoid an anomalous result. What was the legislature's intent? The legislature's intent was to encourage homeowners to clear sidewalks abutting the residence, to clear pedestrian walkways. Which means what, in your mind? A sidewalk abutting the residence. Which means is it owned by the landowner or is it owned by the city? Well, if it's in the public way, so to speak. If it's restricted to only that owned by the city, then the U case, the Kurzak case, and the Bremer case are all incorrectly decided. So we have those three cases that stand for the principle that a sidewalk abutting the premises is not just a sidewalk owned by the city, the traditional municipal sidewalk from the way they laid them out years ago. But it also includes a walkway on the premises, including, as in you, the stew, where people get in and out of someone's house, not just to walk down the street from one end to the other on a pedestrian path. That's case law, though, isn't it? That's not necessarily the definition of abutting sidewalks, is it? That's correct. That is case law. That's from you. That's from Kurzak. That's from Bremer in the 3rd District. And the point of that case law and the analysis that the justices were making when they interpreted the act the way they did was to give effect to the legislature's intent to encourage people to take those efforts to remove snow from walkways, sidewalks, sidewalks abutting the premises. Now, if you want to look at the plain ordinary meeting, if you ask a neighbor who might, you know, if you're out there on a snowy day and shoveling, is this my sidewalk or is this my driveway, you might get one answer. But if you say you're shoveling a driveway area that is clearly a pedestrian path to and from your front door, from the street or from a traditional municipal sidewalk, well, this constitutes a sidewalk abutting the residence. It seems to make a lot more sense that a driveway would be included in that. And to address your concern, Justice, not every driveway, not every street, not every private roadway, if a drive or a private roadway or a parking area is really used more primarily for vehicular traffic than foot traffic, perhaps the courts would be stretching the definition of sidewalk abutting the premises a little far. So we're to use a percentage test? Is that what you're telling us? Well, I would say I actually looked at intended and permitted user as something of an analogous situation from the Kiritola case and from the other Immunity Act. That's not the language of this statute, but in terms of how to analyze it, that's something I came to. A pedestrian is an intended and permitted user, perhaps even a dual use. If it's percentage, it might even be 50-50 or more. Think of the use that a person such as Mr. Gallagher would put to his driveway or any one of us would in our driveways in our homes. People walk on them as much as they drive on them. If they are a means of ingress and access to the unit, to the front door of a home, to the front door of Mr. Gallagher's residence, because if you look at the photographs attached to the motion, if you are going to go up and knock on Mr. Gallagher's front door, you are going to walk on that driveway, walkway, sidewalk abutting the premises type surface. And if you are going to go into Mr. Gallagher's garage, you are going the same way. And a garage is a primary means of access, ingress, and egress for a lot of modern housing developments. It's not like the older style ones where the garages are set back from the home or some of them are set back even with an alley. If you look at a modern condominium complex such as shown in the photographs, people go in and out the garage more often than they do a front door because the front door is considerably set back. And during warm days, they immediately leave their garage open and go in and out and neighbors may come in and visit that way. That's the way functionally people use it. That is, I think, although it's not expressed in so many words, what the flight court had in mind when the flight court talked about the driveway is a foot pavement leading to and from the residence. This particular driveway here is a foot pavement leading to and from the residence. And that's what this court, Justice Bowman, was looking at in Kurzak. The word sidewalk, taken in its ordinary meaning, encompasses all of these foot pavements leading to and from the residence. But now the court in flight really didn't do a statutory analysis here, did they? I mean, they decided the case based on the fact that the plaintiffs, they first decided the case based on the fact that the plaintiffs hadn't adequately alleged an unnatural accumulation and therefore granted summary judgment. Then they went on and really didn't do a statutory analysis but talked about driveway versus sidewalk. Isn't that what the court did there? It is. But I think when you look at driveway versus sidewalk, that is something of a statutory analysis. It is true that there was an independent ground sufficient to uphold that opinion as found by the flight court. That's absolutely correct. But the court also said that here the act was properly applied to bar a plaintiff's claim. Now, whether that is a necessary or sufficient holding to resolve that case, I think that's your point and that's well taken. However, we do have an opinion from the Illinois Appellate Court that specifically addresses this issue. Finding the act was properly applied to bar a plaintiff's claim that is virtually indistinguishable to this one. In terms of the statutory analysis in that case, I think that the appellant is asking a second bite at the apple. It's not exactly correct because it's in a different court. But it's really the same issues as in flight. And I suggest that had the justices in flight had concern that the statutory analysis was incorrect, they would not have reached the decision they did. Although, admittedly, the analysis is short, somewhat cursory, and could have been more extensive. Was there any case cited to the legislative debates or comments made by the legislators concerning the passage or the intent of this statute? No. I've reviewed – there's only a handful of cases on this issue. We have flight. We have you. We have Kurzak. We have Bremer. I think that's it. And I've read through all of them, and I don't believe any of them discuss any of the legislative comments or anything like that. All we really have is the words of the legislature themselves. And Section 1 says it is undesirable for any person to be found liable for damage, damages due to his or her efforts in the removal of snow or ice from such sidewalks, such sidewalks being, quote, sidewalks abutting their residences, end quote. Having said that, I think I've covered everything I wanted to, unless the justices have any more questions. I would just like to note that the you decision indicated that in that case it was astute, said that this was a sensible application of the act to give effect to the intent of the legislature. Flight did the same thing, and I would suggest that this court do the same. Thank you. Thank you. Mr. Foss. Good morning. May it please the court. My name is Richard Foss, and I'm here today on behalf of Union Square, the condominium association, as well as Vanguard, the property owner. And as you're aware, I have adopted the arguments of landscape management with respect to the Immunities Act issues. And therefore, I'm going to spend my time today focusing mainly on the separate arguments, the fact that there might be some separate duty on behalf of my clients that is not covered by the Immunity Act. First of all, the court may want to consider that these issues are waived because we're here today, I believe, on the February 17th, 2009, court order. And in that court order, it was actually based on counsel's motion, the snowmobile motion to dismiss based on the Immunity Act. And the other defendants are noted to have joined in that motion. And there was no separate argument or no separate motion brought by either the condo association or the property owners at that time. So I believe that since that did not come up in the underlying court, we're here today to discuss the Immunity Act issues. That being said, they were certainly raised by counsel in his brief, and I feel obligated to touch on them now. And they were raised in argument this morning. In his brief, counsel indicates that even if Union and Vanguard were immune for their snow and ice removal efforts, the immunity would not extend to their other unrelated negligent failure to exercise their duties as owners slash operators of the premises. And he has indicated that there are duties that were unique to the owners and operators. However, in the complaint, there are no alleged other or unrelated negligent duties. All the duties that are alleged for the owner and operator are completely intertwined with the improper removal of snow. I'm going to argue a 2-6-15 motion now, though. When you say that these things aren't alleged, that usually flows from or is used in reference to a 2-6-15 motion. And I don't think you have to spend your time on it, because for purposes of this appeal, at least, the 2-6-15 motion is not relevant or material. In other words, based upon the record before us, it is my belief, I can't speak for the panel, that we're supposed to determine whether or not as a matter of law or as a matter of mixed fact and law that reasonable minds will not otherwise differ, that the Immunity Act applies here. And if it does, then we affirm it. If it doesn't, it's reversed and remanded for further proceedings. And then you can raise the arguments that you say were raised by appellate counsel, and you can go back to the trial court and make that argument anew or fresh. Okay. So is there anything else you want to discuss? No. If the court is not going to be considering these separate duties or responsibilities, that's what I've come here to address today. It's clear to me that the allegations for the snow removal company are identical to the allegations for my client. There are no separate allegations. Counsel, do you do a lot of real estate law? I don't do any. Do you do any carpentry? Very poor. Do you know what a butt joint is? No. Okay. Do you know what the term abutting might mean? As used in the statute, the term abutting, A-B-U-T-T-I-N-G. Yes. What do you think it means? The term abutting? Well, according to the statute, abutting would be next to or in the vicinity of, and according to the statute, it would be abutting the residence, which I think has been interpreted by the cases that counsel has cited, the new case and such, as being next to the building and not just abutting the property like a municipal sidewalk. Does it say abutting the residence or does it say abutting the property? It says abutting the residence in the statute. If you have a horseshoe driveway, as many homes have, and from the middle of the horseshoe there's a small walk up to the front door, would you include the horseshoe driveway as part of abutting the residence? Another example is some homes have a driveway that is approximately a half block to a block long before you get to the residence. Would that be, and again, there's usually a small walk, a regular concrete walk, that you use to get up to the front door. Would that long driveway, the horseshoe driveway, be an abutting? Well, I don't know if it necessarily would, and the reason why I think so is if you look at the functionality argument, is you're looking at what is the manner in which one would get into the residence, and I believe that in this particular property, certainly one would need to access this driveway as a walkway, just as counsel said he would at his house and I would at my house. There are certainly many circumstances when the statute, the immunity statute, does not make sense if you were to exclude driveways. For example, if you were to walk down the sidewalk in the subdivision where I work, you have sidewalks which are cement squares, and every time you come to a driveway you have to traverse the driveway pavement, whether it's cement or asphalt or brick or whatever the surface of the driveway is, you go from cement to asphalt back to the cement squares, so you're forced as part of the walkway to traverse the driveway. When I'm shoveling my sidewalk, I know it's time to stop because I see the black asphalt from my neighbor's driveway. So does that mean that I'm safe, I'm immune if I'm improperly shoveled in that long stretch going down my property line, but once, as a good neighbor, I've shoveled a couple feet onto the driveway, that I'm now subject to liability because I have gone onto that black surface? I think there are certainly circumstances when it does not make sense to include, to not include the driveway as part of the walkway, and one of those circumstances is the situation here. If you're forced, you're actually forced to walk on this driveway, to go from one area to another. Your Honor, you had mentioned that you had seen photos on the record here. You can see that there is a cement walkway. You have to traverse this driveway area, and there's another cement walkway. If you are just going to your neighbor's condominium next door, you have to traverse that to go from one to another, or if you're a salesman or whoever is utilizing the front door to these houses. So I think that the act would be subverted. It would not, the effect of the legislature would not take effect unless portions of this driveway that are utilized as walkways are included within the area. Would it be the intent of the legislature to encourage homeowners to shovel out that half-mile or half-block long driveway, whatever it may be, or the horseshoe driveway? Well, I think what the legislature is looking at would be the effect on the pedestrians. I think that's what the purpose of the act was, was to provide access to pedestrians and not for vehicles. And so if you had a separate means of access, the function would not be as strong for this horseshoe than it would be if you had no other option to get to the front door. Thank you, counsel. Mr. Adams? To Justice McLaren's question, Section 2 of the statute, the section that grants the immunity, addresses the removal of snow and ice from sidewalks abutting the property. It's frankly the plaintiff's contention that some of the earlier cases preceding flooding, including very respectfully opinions of this court, that have extended the immunity to within the unit owner's property went too far. But we don't have to get the court to reverse itself in that respect here. We only need the court to acknowledge that the statute strictly construes does not extend to driveways. And if the court when it has the opportunity to reread the cases upon which defendants rely, you, Kerchak, and Bremer, all of those cases describe the walkways that they found to be akin to the sidewalk that's described in the statute by giving a description of where they originated from and ended. And in each of those cases, they ended before you got to the driveway or the parking lot. And finally, the flight opinion itself applies this sufficiently akin to a sidewalk definition to bring the driveway within the scope of the statute. Sufficiently akin to a term that is used in a statute as a basis for applying the statute to something that doesn't appear there is not strict construction. It's legislation. And that's what the first district did in flight. It legislated driveways into the statute. This court should reject that sort of sloppy statutory analysis. I wouldn't call that sloppy. That's very precise. They drafted akin to the statute. That's exactly what they did. Thank you very much. Thank you, counsel. At this time, the court will take the matter under advisement and render it.